1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   NATIONAL PRODUCTS, INC.,                     CASE NO. C15-1984JLR

11                    Plaintiff,                  ORDER STAYING CASES
                                                  PENDING *INTER PARTES*
12                    v.                          REVIEW PROCEEDINGS

13   ARKON RESOURCES, INC,

14                    Defendant.

15   NATIONAL PRODUCTS, INC.,                     CASE NO. C15-1985JLR

16                    Plaintiff,

17                    v.

18   HIGH GEAR SPECIALTIES, INC.,

19                    Defendant.

20

21

22

ORDER- 1

| | |
|---|---|
| NATIONAL PRODUCTS, INC., | CASE NO. C15-2024JLR |
| Plaintiff, | |
| v. | |
| WIRELESS ACCESSORY SOLUTIONS, LLC, d/b/a IBOLT – WIRELESS ACCESSORY SOLUTIONS, LLC, | |
| Defendant. | |
| NATIONAL PRODUCTS, INC., | CASE NO. C16-0109JLR |
| Plaintiff, | |
| v. | |
| BRACKETRON, INC., | |
| Defendant. | |

## I.   INTRODUCTION

This matter comes before the court on a joint motion to stay four cases by Defendants Arkon Resources, Inc. ("Arkon"), High Gear Specialties, Inc. ("High Gear"), Wireless Accessory Solutions, LLC, d/b/a iBolt – Wireless Accessory Solutions, LLC ("iBolt"), and Bracketron, Inc. ("Bracketron").  (Mot. (Dkt. # 54).)  Defendants contend that their pending petition for *inter partes* review ("IPR"), which they filed with the Patent and Trademark Office ("PTO") on August 25, 2016, warrants such a stay.  (*See generally id.*)  Plaintiff National Products, Inc. ("NPI") opposes the motion.  (Resp. (Dkt. # 58).)  Having considered the parties' submissions, the appropriate portions of the

ORDER- 2

1    record, and the relevant law, and considering itself fully advised,[1] the court GRANTS

2    Defendants' motion, STAYS the cases pending the decision on Defendants' IPR petition,

3    VACATES all case deadlines after September 30, 2016, and ORDERS the parties to file

4    a joint status report regarding the status of Defendants' IPR petition upon receiving a

5    decision from the PTO or on March 1, 2017, whichever occurs first.

6    **II.   BACKGROUND**

7        This action is a consolidated set of pretrial proceedings for four separate patent

8    infringement cases filed by NPI in the Western District of Washington.[2]  (*See* 4/7/16

9    Min. Entry (Dkt. # 24).)  NPI asserts that Defendants infringe upon United States Patent

10    No. 6,585,212 ("the '212 patent") by creating and selling their respective mounting

11    devices for mobile electronics.  (*See generally* Am. Compls. (Dkt. ## 44-47); *see also*

12    '212 Patent (Dkt. # 44-1).)  NPI filed the earliest of the four consolidated cases against

13    Arkon on December 17, 2015.  (Compl. (Dkt. # 1).)

14        After consolidating the cases for pretrial purposes, the court approved the parties'

15    proposed pretrial scheduling order.  (*See* 4/7/16 Min. Entry (approving 4/4/16 Joint Mem.

16    (Dkt. # 23) at 5).)  The deadlines for the parties to take the following actions have passed:

17    joining additional parties, disclosing preliminary infringement contentions and asserted

18

19

20        [1] NPI requests oral argument, but the court concludes that oral argument would not be helpful to its disposition of this motion and denies NPI's request.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

21

22        [2] Case Nos. C15-1984 (originally assigned to the Honorable Richard A. Jones), C15-1985 (originally assigned to the undersigned judge), C15-2024 (originally assigned to the Honorable Marsha J. Pechman), and C16-0109 (originally assigned to the undersigned judge).

claims, disclosing preliminary invalidity and non-infringement contentions, exchanging a list of proposed terms and claim elements, exchanging preliminary claim constructions and extrinsic evidence, providing expert witness reports on *Markman* issues, providing rebuttal expert reports on *Markman* issues, and providing the preliminary claim chart. (4/4/16 Joint Mem. at 5.)  On September 30, 2016, the court instituted a short-term stay of subsequent deadlines pending a ruling on the longer-term stay that Defendants seek in the instant motion.  (9/30/16 Order (Dkt. # 63) at 2.)  The parties have not yet filed their joint claim chart, prehearing statement, or any briefing regarding the *Markman* hearing. (*See* 4/4/16 Joint Mem. at 5; *see also* Dkt.)  The *Markman* hearing is set for December 2, 2016, at 9:00 a.m.  (*See* Dkt.)

On August 25, 2016, Defendants jointly filed a petition for IPR with the PTO's Patent Trial and Appeal Board ("PTAB").  (Weir Decl. (Dkt. # 55) ¶ 2, Ex. A ("IPR Petition").)  Defendants contend that claims 1 to 13, 21 to 23, 26, 27, 30, and 33 of the '212 patent are unpatentable because they are obvious in light of prior art.  (*Id.* at 18-78.) NPI indicates it will file its preliminary response to Defendants' petition near the end of November 2016 (Resp. at 2), which means that at the latest, the PTAB will determine whether to grant Defendants' petition in late February 2017, *see* 35 U.S.C. § 314(b) (requiring the PTAB to "determine whether to institute" an IPR "within 3 months after . . . receiving a preliminary response to the petition").  If the PTAB grants the petition, it has one year to complete the review but may extend the one-year period by up to six months for good cause.  35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).  Thus, if

1  the PTAB grants the petition and conducts an IPR trial on the '212 patent, that IPR trial

2  and decision may not conclude until early 2018.

3      On August 29, 2016, after confirming that NPI would not stipulate to a stay

4  pending Defendants' IPR petition (Weir Decl ¶ 4), Defendants moved to stay these cases

5  pending a determination on the petition (*see* Mot.).  That motion is now before the court.

6                              **III.   ANALYSIS**

7      The court has the authority to stay these cases pending the outcome of an IPR

8  petition.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Wre-Hol*

9  *v. Pharos Sci. & Applications*, No. C09-1642MJP, 2010 WL 2985685, at *2 (W.D. Wash.

10  July 23, 2010); *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL

11  1967878, at *2 (N.D. Cal. May 1, 2015).  To determine whether to grant such a stay, the

12  court considers "(1) whether a stay will simplify the issues in question and the trial of the

13  case[s], (2) whether discovery is complete and whether . . . trial date[s] ha[ve] already

14  been set, and (3) whether a stay will unduly prejudice or present a clear tactical

15  disadvantage to the non-moving party."  *Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760

16  F. Supp. 2d 1061, 1063 (W.D. Wash. 2011).  "The moving party bears the burden of

17  demonstrating that a stay is appropriate."  *DSS Tech.*, 2015 WL 1967878, at *2.

18  **A.    Simplification of the Case**

19      The court first considers whether and to what extent staying these cases pending

20  the outcome of the IPR petition would simplify the issues in question and the trial of

21  these cases.  *Pac. Bioscience*, 760 F. Supp. 2d at 1063.  Defendants argue that IPR could

22  simplify the case by eliminating the need for trial on invalid claims and by providing an

1   expert opinion on the patent.  (Mot. at 4-5.)  These cases differ from most of those that

2   Defendants cite, however, because the cases are "pre-institution" of IPR—in other words,

3   the PTAB has not yet decided whether to grant the IPR petition and may not do so until

4   late February 2017.  *See* 35 U.S.C. § 314(b).  NPI argues that "this [c]ourt denies

5   pre-institution motions as premature."  (Resp. at 4 (citing *Cascade Designs, Inc. v.*

6   *Thunder Box Inc.*, No. C15-0987MJP (W.D. Wash.), Dkt. # 44; *Levine v. Boeing*

7   *Company*, No. C14-1991RSL (W.D. Wash.), Dkt. # 65).)  The cases NPI cites show that

8   courts in this district have denied pre-institution motions as premature, but not that they

9   do so categorically.[3]  *See Cascade Designs*, Dkt. # 44; *Levine*, Dkt. # 65.  Rather, this

10  court—and other courts in this circuit—apply the three-factor framework from *Pacific*

11  *Bioscience* regardless of whether an IPR petition is pending or has been granted.  *See*

12  *Cascade Designs*, Dkt. # 44 at 2-3; *Levine*, Dkt. # 65 at 2-3; *Pragmatus AV, LLC v.*

13  *Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11,

14  2011) (collecting cases that demonstrate "it is not uncommon for [the Northern District of

15  California] to grant stays pending reexamination prior to the PTO deciding to reexamine

16  the patent"); *DSS Tech.*, 2015 WL 1967878, at *3 (quoting *Evolutionary Intelligence,*

17  *LLC v. Facebook, Inc.*, No. C 13-4202 SI, 2014 WL 261837, at *3 (N.D. Cal. Jan. 23,

18  2014)) ("[E]ither party may file a motion to lift the stay if any part of the petitions for

19

20          [3] In *Levine*, after denying the defendant's initial motion to stay without prejudice to
21  renewing the motion after the PTAB decided whether to grant IPR, Dkt. # 65, the court stayed
    the briefing schedule pursuant to the parties stipulation, Dkt. # 67, and then stayed the case after
    the PTAB granted IPR, Dkt. # 70.  The net effect of these proceedings was to stay the case
22  pending the PTAB's review of the IPR petition.

1    IPR are denied by the PTO—so 'any concern that the motion [ ][is] premature is

2    alleviated by the short time frame of the initial stay and the Court's willingness to

3    reevaluate the stay if *inter partes* review is not instituted for all of the asserted claims.'"

4    (alterations in original)).

5         Recent statistics from the PTAB assist the court in approximating the chances that

6    the PTAB grants the IPR petition and, if the PTAB grants the petition, the chances that

7    IPR simplifies this litigation.  *See* PATENT & TRADEMARK OFFICE: PATENT TRIAL &

8    APPEAL BOARD STATISTICS ["PTAB STATS"] at 10 (July 31, 2016), *available at*

9    http://www.uspto.gov/sites/default/files/documents/2016-07-31%20PTAB.pdf.[4]  In a

10   pre-institution scenario, it is less likely that IPR will simplify the litigation because IPR

11   may never occur.  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316

12   (Fed. Cir. 2014) ("While a motion to stay could be granted even before the PTAB rules

13   on a post-grant review petition, no doubt the case for a stay is stronger after post-grant

14   review has been instituted.").  Of the 3,410 total IPR petitions submitted to the PTAB by

15   July 31, 2016, parties terminated 662 before the PTAB decided whether to grant IPR.

16   *See* PTAB STATS at 10.  Of the 2,748 petitions that the PTAB decided, the PTAB denied

17   1,010 (37 percent) of the petitions and instituted trial on 1,738 (63 percent) of the

18   petitions.  *See id.*  No party has meaningfully differentiated these cases or the '212 patent

19

---

20       [4] "Documents available through government agency websites are often considered
     appropriate for judicial notice as documents in the public record not reasonably subject to
21   dispute."  *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14-cv-02006-JST, 2015
     WL 510919, at *3 (Feb. 5, 2015) (collecting cases).  Although the exact date that the PTAB
22   began collecting data is unclear, it appears to be in June 2014 and is irrelevant to the court's
     percentage-based approximations.  (*See* PTAB STATS at 4.)

1    from a typical case and patent submitted to the PTAB, and thus the court concludes that

2    there is an approximately 37 percent chance that the PTAB denies the IPR petition and an

3    approximately 63 percent chance that the PTAB grants the IPR petition.

4         As of July 31, 2016, 1,086 IPR trials had reached a final written decision.  *Id.*  Of

5    those 1,086 IPR trials, 764 (70 percent) resulted in all instituted claims being deemed

6    unpatentable, 164 (15 percent) resulted in some instituted claims being deemed

7    unpatentable, and 158 (15 percent) resulted in no instituted claims being deemed

8    unpatentable.  *See id.*  The claims that Defendants submitted in their IPR petition

9    substantially overlap with the claims at issue in this litigation.  (IPR Petition at 18-78;

10   Am. Compls.; *see also* Mot. at 3.)  The parties have provided no persuasive reason to

11   believe that Defendants' IPR petition, if granted, is more or less likely to succeed than the

12   average petition submitted to the PTAB.  Accordingly, the court concludes that if

13   instituted, an IPR trial would have approximately a 70 percent chance of substantially

14   simplifying these cases, a 15 percent chance of insubstantially simplifying the cases by

15   concluding some but not all claims are unpatentable, and a 15 percent chance of not

16   affecting the cases.  (*See* PTAB STATS at 10.)

17        Based on these calculations, the court roughly approximates a 44 percent[5] chance

18   that the IPR petition substantially simplifies the cases, a 9 percent[6] chance it

19

20

------

21      [5] 0.63 x 0.70 = 0.44.

22      [6] 0.63 x 0.15 = 0.09.

ORDER- 8

1  insubstantially simplifies the cases, and a 46 percent[7] chance the IPR petition does not

2  affect the cases.[8]  In other words, it is approximately equally likely that the IPR petition

3  does not affect the cases and that it substantially simplifies the cases, with some

4  likelihood that the petition simplifies the cases in only a minor way.  However, if the IPR

5  petition proves not to affect the cases, there is an 80 percent[9] chance that the reason the

6  petition does not affect the cases is because the PTAB denied the IPR petition, which

7  would occur by February 2017.  This minimal delay would cause less prejudice to NPI

8  than the delay from a full IPR trial and mitigates the court's concern about this point.

9          Based on the foregoing calculations and analysis, the court finds that there are

10  nontrivial, comparable odds that the IPR petition substantially simplifies these cases and

11  that the IPR petition only minimally, if at all, simplifies the cases.  Accordingly, the court

12  concludes this factor is neutral.

13  **B.    Stage of the Litigation**

14          The second factor that the court considers is the stage of the litigation.  *Pac.*

15  *Bioscience*, 760 F. Supp. 2d at 1063.  In *Pacific Bioscience*, this court stayed a case in

16  which the parties had performed "limited written discovery and document production"

17  and had "not even scheduled, let alone taken, any depositions" or "submitted claim

18  construction briefs."  *Id.*  Unlike here, the court had also already set a trial date.  *Id.*  At

19  ───────────────

20          [7] $(0.63 \times 0.15) + 0.37 = 0.46$.

21          [8] 44 percent plus 9 percent plus 46 percent equals 99 percent.  The missing 1 percent is
    due to rounding throughout the court's calculations.

22          [9] $0.37 / 0.46 = 0.80$.

1  most, these cases and *Pacific Bioscience* had reached similar stages when the court stayed

2  *Pacific Bioscience*.  *See id.*; (4/4/16 Joint Mem. at 5; 9/30/16 Order at 2 (staying briefing

3  prior to the filing of opening *Markman* briefs); Davison Decl. ¶¶ 6-10; Supp. Weir Decl.

4  (Dkt. # 61) ¶ 2, Ex. C (showing that NPI's first document production occurred on August

5  31, 2016, after Defendants moved to stay the litigation).)

6        NPI characterizes the stage of this litigation as "sufficiently advanced that a stay is

7  not appropriate."  (Resp. at 7.)  However, much of NPI's argument to this effect proceeds

8  on the assumption that these cases will continue to progress past their current stage and

9  that this progression is relevant to the court's analysis.  (*See, e.g.*, Resp. at 7 ("[D]uring

10  the next six months, the parties can make significant progress on this case pursuant to the

11  schedule agreed to by the parties and entered by the Court. . . . In six months, the parties

12  will have completed document production . . . ; the court will have held the *Markman*

13  hearing . . . ; and the parties will be only days away from the deadline for discovery

14  completion . . . ."); *compare id.* at 7 n.5 ("The defendants have not asked this Court to

15  suspend any impending deadlines—including the Joint Claim Chart and Prehearing

16  Statement on October 5 and opening *Markman* briefs on October 12—pending resolution

17  of their motion to stay."), *with* 9/30/16 Order (staying deadlines for the joint claim chart,

18  prehearing statement, and opening *Markman* briefs).)  Contrary to NPI's argument, "the

19  proper time to measure the stage of the litigation" is at "the date of the filing of the

20  motion to stay."  *VirtualAgility*, 759 F.3d at 1316.  This factor favors staying these cases

21  in part to avoid the potential of imposing the future costs that NPI identifies.

22

1    NPI also argues that the stage of the litigation counsels against granting a stay

2  because "[g]ranting a stay at this stage of the case would reward the defendants for

3  belatedly filing their IPR petition."  (Resp. at 6.)  However, NPI makes no subsequent

4  argument or showing that the IPR petition was "belated" (*id.* at 6-7), and Defendants

5  persuasively justify the delay of approximately eight months between NPI filing its

6  complaints and Defendants petitioning the PTAB for IPR (*see* Reply (Dkt. # 60) at 3

7  (explaining how the proceedings in this case led to Defendants' decision to petition for

8  IPR)).  Furthermore, the law permits Defendants to seek IPR within one year of being

9  served with a suit for patent infringement.  *See* 35 U.S.C. § 315(b).  Accordingly, the

10  court finds NPI's argument unpersuasive and finds that this factor strongly favors

11  granting a stay.

12  **C.    Undue Prejudice**

13    The final factor in the court's analysis is undue prejudice to NPI.  Courts,

14  including this one, "have found that mere delay does not demonstrate undue prejudice."[10]

15  *Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C08-0184JLR, 2009 WL

16  357902, at *3 (W.D. Wash. Feb. 9, 2009).  However, NPI argues that a stay would

17  unduly prejudice NPI because it directly competes with Defendants.

18  _____

19    [10] NPI points out that this court "has acknowledged that prior to institution it is 'hard to
justify any delay that might be caused by a stay.'"  (Resp. at 9 (citing *Levine*, Dkt. # 65 at 3).)

20  The pre-institution status is most relevant to the first factor—whether a PTAB decision is likely
to simplify the issues in these lawsuits.  *See supra* § III.A.  It may also be relevant to the third

21  factor—undue prejudice—but only to the extent the potential for a lengthier stay, pending review
of the IPR petition, enhances the undue prejudice to NPI.  However, the court finds

22  inconsequential the few additional months of "mere delay" pending the PTAB's decision
whether to grant IPR.  *Implicit Networks*, 2009 WL 357902, at *3.

1    "Courts are hesitant to grant a stay if the parties are direct competitors." *Palomar*

2    *Techs., Inc. v. Mrsi Sys., LLC*, No. 15-CV-1484 JLS (KSC), 2016 WL 4496839, at *5

3    (S.D. Cal. June 14, 2016).  Here, however, NPI makes no showing that a stay will cause

4    any damage that cannot be remedied by monetary damages.  (*See* Resp. at 9.)

5    Furthermore, like in *Palomar*, "[n]o evidence has been presented by either side

6    quantifying the level of competition between the two parties or the market share loss that

7    will or will not result from the [c]ourt staying th[ese] action[s] pending IPR." *Id.*  Other

8    courts in the Ninth Circuit have required such evidence "to substantiate an argument that

9    direct competition will result in prejudice to the non-moving party." *Cypress*

10   *Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-cv-02013-JST, 2014 WL 5021100, at *5

11   (N.D. Cal. Oct. 7, 2014) (collecting cases).

12        Defendants do not contest Plaintiffs' assertion that the parties are direct

13   competitors.  (*See* Reply at 6.)  Therefore, despite the lack of evidence quantifying the

14   direct competition, at least some "prejudice is likely [because] the parties are direct

15   competitors." *TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*, No.

16   13-cv-02218-JST, 2013 WL 5289015, at *4 (N.D. Cal. Sept. 18, 2013).  However, the

17   four-and-a-half month delay until February 2017, when the PTAB must rule on the IPR

18   petition, is minor compared to the four-and-a-half years during which NPI's products

19   have already shared the marketplace with at least two of Defendants' products.  (*See*

20   Larson Decl. (Dkt. # 62) ¶ 3 (indicating that Bracketron "first began selling the Accused

21   Products in this lawsuit on or about January 9, 2012"); *see* Supp. Weir Decl. ¶ 4, Ex. E

22   (showing an archived website from September 2011, in which Arkon offers one of the

1   allegedly infringing products for sale).)  The court cannot infer significant prejudice due

2   to direct competition where NPI took no legal action to remedy the situation for that

3   lengthy period of time.  Although the delay would be more prolonged if the PTAB grants

4   IPR, the overall "case for a stay [becomes] stronger" at that point.  *VirtualAgility*, 759

5   F.3d at 1316.  Accordingly, the court concludes that a stay will cause minimal prejudice

6   due to direct competition between the parties.

7          Based on the unquantified direct competition between NPI and Defendants, the

8   court concludes this factor marginally weighs against granting a stay.

9   **D.     Balancing the Factors**

10          The early stage of this litigation, which is at a comparable stage to *Pacific*

11  *Bioscience*, leads the court to conclude that a stay is appropriate.  Neither of the other two

12  factors points strongly in either direction, and the primary difference between these cases

13  and *Pacific Bioscience*—that here, the PTAB has not yet adjudicated the IPR petition—

14  does not alter the court's conclusion.  The court therefore stays this case and orders the

15  parties to file a joint status report regarding the status of Defendants' IPR petition upon

16  receiving a decision from the PTO or on March 1, 2017, whichever occurs first.

17                       **IV.     CONCLUSION**

18          Based on the foregoing analysis, the court GRANTS Defendants' motion (Dkt.

19  # 54), STAYS the cases pending the decision on Defendants' IPR petition, VACATES all

20  case deadlines after September 30, 2016, and ORDERS the parties to file a joint status

21  //

22  //

ORDER- 13

1  report regarding the status of Defendants' IPR petition upon receiving a decision from the

2  PTO or on March 1, 2017, whichever occurs first.

3       Dated this 14th day of October, 2016.

4

5

6                                              _____

7                                              JAMES L. ROBART
                                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 14